## SECURITIES AND EXCHANGE COMMISSION

v.

## SAVOY INDUSTRIES, INC., et al.

### Appeal of S. Mort ZIMMERMAN.

### No. 79–1947.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1980.

Decided Sept. 28, 1981.

R. A. Dean Carlton, Washington, D. C., with whom Irving R. M. Panzer, Washington, D. C., was on the brief, for appellant.

Elisse B. Walter, Atty., Securities and Exchange Commission, Washington, D. C., with whom Jacob H. Stillman, Associate Gen. Counsel, Paul Gonson, Sol., Linda W. Otis, Sp. Counsel, and S. Lee Terry, Jr., Atty., Securities and Exchange Commission, Washington, D. C., were on the brief, for appellee. William A. Dietch, Atty., Securities and Exchange Commission, Washington, D. C., also entered an appearance for appellee.

Before ROBINSON, Chief Judge, and TAMM and WOOD,* Circuit Judges.

Opinion for the Court filed by Chief Judge ROBINSON.

ROBINSON, Chief Judge:

We are presented with still another chapter in the continuing struggle between S. Mort Zimmerman and the Securities and Exchange Commission (SEC).[1] The District Court now has held Zimmerman in violation of several provisions of the federal securities laws and rules promulgated thereunder, and enjoined him from engaging in such misconduct in the future. Zimmerman challenges the court's conclusions, contending that its factual findings are in error and that the injunction entered against him is invalid. We affirm the findings of fact and, save for but one of its provisions, uphold the injunction as framed.

## I. BACKGROUND [2]

In 1969, Zimmerman embarked upon a course of action designed to obtain control

---

* Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a) (1976).

1. See the cases cited *infra* note 2.

2. Mere summary of the complex facts of this litigation suffices for an understanding of the issues on appeal. Further explanations of the intricacies of Zimmerman's operational scheme, and the relationships and motives of

the various persons and entities it involved, may be found in two opinions of the District Court: *SEC v. Zimmerman*, No. 74–1711 (D.D.C. June 29, 1979), Joint Appendix (J.App.) 138 [hereinafter cited as *Zimmerman II*], and *SEC v. Zimmerman*, 407 F.Supp. 623 (D.D.C. 1976), *aff'd in part, vacated in part sub nom. SEC v. Savoy Indus., Inc.*, 190 U.S.App.D.C. 252, 587 F.2d 1149 (1978), *cert. denied*, 440 U.S.

of States General Life Insurance Company, Inc., a publicly-held corporation. He concentrated his efforts initially on direct purchases of States General stock, in combination with indirect acquisition of its shares through the use of tender offers by companies already under his control. When these stratagems failed, Zimmerman sought to achieve his objective more circuitously by acquiring stock in Savoy Industries, Inc., another publicly-held corporation controlled by its president, Louis Danenberg, his longtime friend and co-investor. Zimmerman planned to take over Savoy and use it to gain control of States General.

Zimmerman was afraid to attempt a takeover of Savoy openly, however, realizing that the history of his securities-law transgressions[3] could provoke opposition from Savoy's shareholders. To prevent his plans from being thwarted in this manner, Zimmerman organized a takeover group to function at his direction, although he was not formally a member. The group eventually consummated an agreement with Savoy by which it would obtain control. In order to insure the success of the effort, Zimmerman's participation was kept secret. Neither his role nor his future intentions for Savoy were disclosed in any of Savoy's various filings with SEC and the American Stock Exchange, in documents mailed by Savoy to its shareholders, or in papers filed with SEC by the takeover group.

In 1974, SEC sued Zimmerman, along with several other individual and corporate participants in the takeover effort, for infraction of various antifraud and reporting provisions of the federal securities laws and regulations. The District Court, in 1976, held that Zimmerman had violated a number of such provisions in a variety of ways: Sections 13(d)(1) and 13(d)(3) of the Securities Exchange Act of 1934[4] by failing to file a Schedule 13D with SEC; Sections 10(b),[5] 13(d)(1) and 13(d)(3) of the 1934 Act and Rules 10b–5[6] and 13d–1[7] thereunder, and Section 17(a) of the Securities Act of 1933[8] by filing, in the name of the takeover group, a Schedule 13–D concealing his membership in the group; Sections 10(b) and 13(a)[9] of the 1934 Act, Rules 10b–5, 13a–1,[10] and 13a–11[11] thereunder, and Section 17(a) of the 1933 Act[12] through Savoy's filing of false and misleading documents with SEC at a time when the corporation was under Zimmerman's control; Section 10(b) of the 1934 Act, Rule 10b–5 thereunder, and Section 17(a) of the 1933 Act as a consequence of Savoy's filing of a false and misleading listing application with the

---

913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979) [hereinafter cited as *Zimmerman I*]. A more complete presentation of the facts is also made in our own prior opinion in this case, *SEC v. Savoy Indus., Inc., supra.*

3. In 1969, Zimmerman consented to a permanent injunction against violations of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (1976), or the latter's implementing Rule 10b–5, 17 C.F.R. § 240.10b–5 (1980), by promulgation or dissemination of misleading press releases, brochures, or other written or oral statements concerning two corporations. *SEC v. Intercontinental Indus., Inc.,* 69 Civ. 30003 (D.B.B.) (S.D.N.Y.1969).

In 1972, pursuant to an indictment returned in 1971 in the United States District Court for the Southern District of Florida, in an unrelated matter involving sales of securities of another company, Zimmerman was fined $30,000 and placed on five years' probation on his plea of guilty to three counts of securities fraud and one count of mail fraud. Brief for Appellee at 13 n.19.

4. 15 U.S.C. § 78m(d)(1) & (3) (1976 & Supp. III 1979).

5. *Id.* § 78j (1976).

6. 17 C.F.R. § 240.10b–5 (1980).

7. *Id.* § 240.13d–101 (1980). Although SEC has revised this rule during the years since Zimmerman engaged in the conduct at issue in this litigation, his liability does not depend on which version is deemed controlling. See *SEC v. Savoy Indus., Inc., supra* note 2, 190 U.S. App.D.C. at 263 n.29, 587 F.2d at 1161 n.29.

8. 15 U.S.C. § 77q(a) (1976). See note 24 *infra.*

9. 15 U.S.C. § 78m(a) (1976).

10. 17 C.F.R. § 240.13a–1 (1980).

11. *Id.* § 240.13a–11 (1980).

12. See note 24 *infra.*

American Stock Exchange and sending a false and misleading letter to Savoy's shareholders. On the basis of these conclusions, the District Court enjoined Zimmerman from engaging in conduct transgressing the laws and regulations he had infringed in the course of the Savoy takeover. The injunction restrained activity associated with the sale or purchase of the securities of Savoy or any other issuer, and forbade Zimmerman to engage in any other deceitful or fraudulent act against any person.[13]

Zimmerman appealed that decision to this court. In 1978, we affirmed the District Court with respect to its holding that Zimmerman had violated Sections 13(d)(1) and 13(d)(3) of the Securities Exchange Act of 1934 and rules promulgated thereunder.[14] We remanded the remainder of the case, however, to the District Court for "a further illumination" of its findings as to the basis for Zimmerman's accountability under Sections 20(a) and 20(b) of the 1934 Act[15] for the documents filed with the American Stock Exchange or mailed to shareholders on behalf of Savoy.[16] We also requested the District Court reach a factual resolution on whether Zimmerman had acted with scienter, noting that the Supreme Court's decision in *Ernst & Ernst v. Hochfelder,*[17] holding that private parties must prove scienter in actions for damages under the antifraud provisions of Section 10(b) of the Securities Exchange Act,[18] had been announced after the District Court's original rulings. Confronted with the question whether proof of scienter was also required in actions brought by SEC itself, we withheld comment on that subject pending the District Court's determination as to the presence or absence of scienter in Zimmerman's instance.[19] Finally, we addressed the question of validity of the injunction entered against Zimmerman, and "[b]ecause there remain[ed] doubt as to the existence of some of the violations underlying the injunction, we [felt] that the issue concerning the proper scope of [its] language [was] best considered, if at all, [upon formulation of] a precise definition of all the violations."[20] Consequently, "we remand[ed] with instructions to the district court to modify the second and third paragraphs of its injunction *pendente lite,* so as to encompass only the specific violations affirmed on appeal and so as to limit its scope to Savoy."[21]

On remand, the District Court found that Zimmerman controlled both the takeover group and Savoy, through its officers and directors, during the period of dissemination of the false and misleading documents at issue in the litigation.[22] The court further found that Zimmerman had purposely "in bad faith, 'with scienter,'" caused the takeover group and Savoy wrongfully to omit from the documents filed with SEC and the American Stock Exchange and transmitted to Savoy shareholders any ref-

---

13. *Zimmerman I, supra* note 2, 407 F.Supp. at 631. A portion of this injunction, subsequently revised slightly, *Zimmerman II, supra* note 2, Amended Order at 1–2, J.App. 167–168, is quoted in text *infra* at note 45.

14. *SEC v. Savoy Indus., Inc., supra* note 2, 190 U.S.App.D.C. at 275, 587 F.2d at 1172.

15. 15 U.S.C. § 78t(a)–(b) (1976). Although the District Court had not originally cited § 20(a) or § 20(b) of the Securities Exchange Act of 1934, upon review of its holding we concluded that those provisions must have formed the intended basis of liability under the District Court's control theory. Consequently, we directed the District Court on remand to consider the applicability of these sections. *SEC v. Savoy Indus., Inc., supra* note 2, 190 U.S.App.D.C. at 272–274, 587 F.2d at 1169–1171.

16. 190 U.S.App.D.C. at 272–275, 587 F.2d at 1169–1172.

17. 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

18. *Id.* at 214, 96 S.Ct. at 1391, 47 L.Ed.2d at 689.

19. *SEC v. Savoy Indus., Inc., supra* note 2, 190 U.S.App.D.C. at 275, 587 F.2d at 1172.

20. *Id.*

21. *Id.* at 275–276, 587 F.2d at 1172–1173.

22. *Zimmerman II, supra* note 2, at 3–4, J.App. 140–141.

erence to his participation in the takeover.[23] Accordingly, the court held Zimmerman responsible therefor under Sections 10(b), 13(a), 13(d), 20(a) and 20(b) of the Securities Exchange Act of 1934 and Rule 10b–5 thereunder.[24] On the basis of these conclusions, the District Court revived and re-entered against Zimmerman the earlier injunction which we had modified *pendente lite*.[25] In 1979, after SEC requested amendment of the injunction, the District Court revised its order in some respects.[26]

Zimmerman now comes back to us on appeal from the District Court's last decision, alleging principally that the court's findings of fact are in error and that the

23. *Id.* at 4, J.App. 141.

24. *Id.* & Conclusions of Law, *id.* at 19–27, J.App. 156–164. On remand, SEC chose not to pursue the action against Zimmerman under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1976), so the District Court dismissed the proceedings thereunder. *Zimmerman II, supra* note 2, at 27, J.App. 164.

25. *Id.*, Order, J.App. 165.

26. *Id.*, Amended Order (filed Aug. 20, 1979), J.App. 167.

27. In addition to his principal claims, Zimmerman raises other contentions that plainly are without merit. We fail to comprehend the meaning of his statement that "the District Court derived due process to the Appellant." Brief for Appellant at 5. Apparently it has some significance to his argument that the court neglected, in violation of Fed.R.Civ.P. 52, to make independent findings of fact on remand, *id.*, but we see no evidence of such an error here. Although the court substantively adopted a considerable portion of the factual findings proposed by SEC, it made significant alterations, additions, and deletions in SEC's submission.

Nor do we find substantial Zimmerman's contention that he was entitled to an evidentiary hearing on remand. We sent the case back to the District Court for an elaboration of its control theory of liability, including the applicability of §§ 20(a) and 20(b), see text *supra* at note 15, and for "a further illumination" of its factual findings as to Zimmerman's control of Savoy and the presence or absence of scienter. See text *supra* at notes 15–19. Since this involved essentially only an explanation of the court's prior findings of fact and conclusions of law and could be completed merely with the aid of the original record, there was no need for an evidentiary hearing.

injunction ultimately entered against him is illegal.[27]

## II. THE DISTRICT COURT'S FINDINGS OF FACT

Zimmerman complains that the District Court's ruling that through his control of the takeover group and Savoy he intentionally violated the securities laws cannot possibly be correct. Specifically, he claims that the timing of the filing and dissemination of the Savoy documents precluded a finding that he was responsible for the false and misleading statements they contained because they were prepared and transmitted prior to the actual takeover of Savoy by the Zimmerman control group.[28]

28. Brief for Appellant at 17. Citing no authority whatsoever, Zimmerman also insists that he cannot be held liable for the false and misleading documents disseminated by Savoy because those items were prepared by an outside law firm. We disagree. In view of the District Court's finding that Zimmerman controlled Savoy at all relevant times, he was responsible for Savoy's failure to fulfill its disclosure obligations. Compliance with federal securities laws cannot be avoided simply by retaining outside counsel to prepare required documents. See, *e.g., Tarvestad v. United States,* 418 F.2d 1043, 1047 (8th Cir. 1969), *cert. denied,* 397 U.S. 935, 90 S.Ct. 944, 25 L.Ed.2d 116 (1970). Zimmerman has made no attempt to claim the defense of reliance on *advice* of counsel, and the courts that to date have recognized this defense have required the defendant to establish that he (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice. See *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1101–1102 (2d Cir. 1972); *United States v. Custer Channel Wing Corp.,* 376 F.2d 675, 683 (4th Cir.), *cert. denied,* 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967); *Papilsky v. Berndt,* [1976–77] Fed.Sec. L.Rep. (CCH) ¶ 95,627, at 90, 132–90, 135 (S.D. N.Y.1976); *SEC v. M. A. Lundy Assoc.,* 362 F.Supp. 226, 233 (D.R.I.1973); *United States v. Hill,* 298 F.Supp. 1221, 1234–1235 (D.Conn. 1969); Hawes & Sherrard, *Reliance on Advice of Counsel as a Defense in Corporate and Securities Cases,* 62 Va.L.Rev. 1, 19–37 (1976). Even when established, such reliance does not operate as an automatic defense, but is only one factor to be considered in determining the propriety of injunctive relief. See *SEC v. Manor Nursing Centers, Inc., supra,* 458 F.2d at 1101; *United States v. Schaefer,* 299 F.2d 625, 630–631 (7th Cir.), *cert. denied,* 370 U.S. 917,

In making this argument, Zimmerman attacks the logic and consistency of the court's conclusions rather than its basic underlying findings of fact. We have carefully considered the challenge from this perspective and have concluded that Zimmerman's objections are without merit.

█ The District Court held Zimmerman responsible for the takeover group's filing of a Schedule 13–D, for Savoy's filings of a Form 8–K Report, a Form 10–K and an American Stock Exchange listing application, and for the transmittal of a letter to Savoy shareholders, all of which contained false and misleading statements. Zimmerman's attempt to avoid liability on grounds that he did not control Savoy at the time when four of the five documents were disseminated must fail. First, we cannot understand how Zimmerman could escape blame for the Schedule 13–D on the ground of an alleged lack of control over Savoy. The District Court has clearly and consistently found that Zimmerman controlled the takeover group from its inception,[29] and that is enough to subject him to the consequences of the false and misleading filing. Second, even if Zimmerman had not controlled Savoy prior to the date when the board of directors installed as a consequence of the takeover agreement assumed management of the corporation, the Form 10–K was filed more than a month after the change in directors. Thus, the filing of the false and misleading information contained in this document alone subjects Zimmerman to sanctioning under the securities laws, as the District Court held.[30]

We do not rest our affirmance solely on the Schedule 13–D and the Form 10–K, however, for we think that the court's finding that Zimmerman was responsible for the remaining three filings is well supported. The court obviously did not believe Zimmerman's claim that he had nothing to do with these documents. It found that though Zimmerman had not physically handled or prepared any of the documents himself, he had "with a complete lack of good faith, induced ... the false and misleading [filings]."[31] Contrary to Zimmerman's contention that the timing of these documents precludes holding him accountable for their contents, the District Court's underlying findings buttress its conclusion in two ways. First, the court found that Zimmerman controlled Savoy, through its president, Louis Danenberg, when he, among others, agreed to the mechanics of Zimmerman's takeover scheme.[32] The court further found that Danenberg was motivated to go along with Zimmerman, with whom he had frequently engaged in business dealings in past years, because the scheme presented him with an opportunity to withdraw from Savoy in an acceptable manner. At the time, Danenberg was conscious of his advancing age and ill health, and he hoped to find a way to "get out" free of SEC reporting requirements.[33] Considering Danenberg's motives, his acceptance of Zimmerman's scheme, and Danenberg's active role in procuring Savoy's agreement to the takeover,[34] the court reasoned that Zimmerman controlled Danenberg's actions with respect to Savoy;[35] and from this followed the deduction that "[c]ontrol of Danenberg meant control of

82 S.Ct. 1553, 8 L.Ed.2d 497 (1962); *cf. Linden v. United States*, 254 F.2d 560, 568 (4th Cir. 1958) (advice of counsel defense in context of prosecution for mail fraud). We need not decide whether the defense is available in this circuit, since Zimmerman plainly has failed to meet any of the prerequisites necessary for its invocation.

**29.** *Zimmerman II, supra* note 2, at 3–4, 8–12 (Findings of Fact Nos. 13–15), J.App. 140–141, 145–149.

**30.** *Id.* at 22, 25 (Conclusions of Law Nos. 9, 20), J.App. 159, 162.

**31.** *Id.* at 24 (Conclusion of Law No. 17), J.App. 161.

**32.** *Id.* at 160 (Conclusion of Law No. 15), J.App. 23.

**33.** *Id.* at 7–8 (Finding of Fact No. 11), J.App. 144–145.

**34.** *Id.* at 12–13 (Findings of Fact Nos. 17–19), J.App. 149–150.

**35.** *Id.* at 24 (Conclusion of Law No. 16), J.App. 161.

Savoy." [36] The court rested this latter finding on incontrovertible facts: Danenberg was president of Savoy,[37] as well as chairman of its board and a major stockholder; [38] and he appeared to possess power to act virtually alone on behalf of the corporation,[39] undertaking, for example, to negotiate the takeover for Savoy, to hire a new director at Zimmerman's request, and to change accounting firms on Zimmerman's command.[40]

Moreover, the District Court found that Zimmerman transformed his *de facto* control into "legally enforceable" power in 1974 when Savoy and the takeover group signed the takeover agreement.[41] Although the new board nominated by the takeover group did not assume control until three months later, the court found that during the interim Savoy functioned pursuant to obligations imposed by the takeover agreement, thus further enhancing Zimmerman's already strong control of Savoy.[42] It was during this interval that the Form 8–K, American Stock Exchange listing application, and the letter to Savoy shareholders were issued.

We are satisfied that the District Court's conclusions are firmly supported by the underlying facts. The timing of the dissemination of the documents in question interposed no barrier to the court's holding that Zimmerman bore responsibility for their contents since at all times relevant he controlled the entities that transmitted the documents.

## III. THE DISTRICT COURT'S INJUNCTION

Zimmerman also contends that the injunction entered against him by the District Court violates Rule 65(d) [43] of the Federal Rules of Civil Procedure because, he says, it is overbroad, lacking in specificity, and cast in language closely parallelling the statutes and SEC rules under which the District Court held him liable.[44] The critical portions of the injunction follow:

IT IS ORDERED, ADJUDGED AND DECREED, that defendant S. Mort Zimmerman (Zimmerman), his agents, servants, partners, assigns and those persons in active concert or participation with him, are hereby restrained and enjoined from, directly or indirectly, making use of the means or instrumentalities of Interstate commerce or of the mails, in connection with the purchase or sale of securities of Savoy Industries, Inc. (Savoy) or any other issuer, to make any untrue statements of material facts or to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading and to engage in any act, practice or course of business which operates or would operate as a

---

36. *Id.* at 12 (Finding of Fact No. 17), J.App. 149.

37. *Id.*

38. *Id.* at 12–13, J.App. 149–150.

39. *Id.*

40. *Id.* (Findings of Fact Nos. 17, 19), J.App. 149, 150.

41. *Id.* at 13 (Finding of Fact No. 20), J.App. 150.

42. *Id.*

43. *"Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other doc-

ument, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d).

44. Brief for Appellant at 7–8. Zimmerman also complains that the District Court's amendment of its injunction on motion by SEC, see text *supra* at note 26, violated Fed.R.Civ.P. 60. Zimmerman is in no position to protest the deletion of the word "offer" since he benefited from this narrowing of the injunction's scope. We need not address Zimmerman's argument with respect to the rephrasing of the last clause of the first ordering paragraph, since we hold that this provision must be stricken for other reasons. See text *infra* at notes 61–62.

fraud or deceit upon any person; and it is further

ORDERED, ADJUDGED AND DECREED, that defendant Zimmerman, his agents, servants, partners, assigns and those persons in active concert or participation with them, are hereby restrained and enjoined from directly or indirectly filing or causing Savoy or any other company to file any annual, periodic or other reports with the Securities and Exchange Commission containing untrue statements of material facts or omitting to state material facts necessary to make the statements made in light of the circumstances under which they were made not misleading or to omit information required to be stated therein, and from failing to file or causing the failure to file said reports on a timely and current basis . . . .[45]

■ We agree that, to a very limited extent Zimmerman's objections are well taken. In our view, the last clause of the first ordering paragraph of the injunction must be eliminated.[46] We do not, however, accept his arguments with respect to the remaining provisions. To be sure, the Supreme Court has cautioned on a number of occasions that an injunction may not be so broad or imprecise as to leave one subject to it in doubt as to the conduct actually pro-hibited; as the Court stated in *Hartford-Empire Co. v. United States*,[47] "[t]he decree must not be 'so vague as to put the whole conduct of the defendants' business at the peril of a summons for contempt,' [nor may it] enjoin 'all possible breaches of the law' . . . ."[48] We are mindful, too, that courts have struck down injunctions which effectively have ordered the defendant simply to refrain from violating the law "in any particular"[49] or from breaching a general duty.[50] It does not follow, however, that a broadly-phrased injunction may never be valid, nor that a prohibition of future transgressions, even in relatively wide-ranging terms, of a law already broken by the defendant is necessarily invalid. For example, in *McComb v. Jacksonville Paper Co.*,[51] the Supreme Court upheld an injunction which "[b]y its terms . . . enjoined any practices which were violations of [particular] statutory provisions,"[52] recognizing that "[d]ecrees of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown."[53] As the Court has stated elsewhere, "[a] federal court has broad power[54] to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless en-

---

**45.** *Zimmerman II, supra* note 2, Amended Order at 1–2, J.App. 167–168.

**46.** This we later discuss. See text *infra* at notes 61–62.

**47.** 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945).

**48.** *Id.* at 410, 65 S.Ct. at 385, 89 L.Ed. at 360.

**49.** See, *e.g., Russell C. House Transfer & Storage Co. v. United States*, 189 F.2d 349, 351 (5th Cir. 1951).

**50.** See, *e.g., Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244 (2d Cir. 1972). Despite Zimmerman's protestations to the contrary, we do not find this injunction at all unintelligible. See *International Longshoremen's Ass'n Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 69–72, 88 S.Ct. 201, 204–206, 19 L.Ed.2d at 236, 241–243 (1967); *Brumby Metals, Inc. v. Bargen*, 275 F.2d 46, 49 (7th Cir. 1960).

**51.** 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

**52.** *Id.* at 192, 69 S.Ct. at 500, 93 L.Ed. at 604.

**53.** *Id.* Without such injunctions, in some instances "a whole series of wrongs is perpetrated and a decree of enforcement goes for naught," *id.* at 193, 69 S.Ct. at 500, 93 L.Ed.2d at 605, for defendants simply work out new plans not within the ambit of the narrow prohibitions imposed upon them. *Id.* at 192, 69 S.Ct. at 500, 93 L.Ed.2d at 605.

**54.** Section 21(d) of the Securities Exchange Act, 15 U.S.C. § 78u(d) (1976), authorizes SEC to sue in the federal district courts for injunctions against violations of the federal securities laws. By § 21(e), 15 U.S.C. § 78u(e) (1976), these courts are empowered to issue injunctions commanding compliance with the laws and regulations promulgated thereunder.

joined, may fairly be anticipated from the defendant's conduct in the past." [55]

■ The occasion for injunctions of the type approved in *McComb* frequently arises when serious wrongdoing in the securities area has been proven. A number of the courts of appeals have rejected challenges to injunctions extending their prohibitions to dealings in all securities issues rather than simply to those which the defendant's unlawful activities involved. In *SEC v. Manor Nursing Centers, Inc.*,[56] for instance, the Second Circuit upheld an injunction encompassing all issues, reasoning that

> the district court was justified in believing that an injunction limited to violations involving ... shares [of the corporation connected with the illegal conduct] would not adequately protect public investors. The violations of the federal securities laws committed by appellants ... demonstrated their propensity to use various corporate entities to achieve unlawful objectives.[57]

We think that the same thing may be said of the injunction entered against Zimmerman. Given his complex machinations, the number of individuals and entities he implicated in the Savoy-States General scheme, and his prior history of both civil and criminal infringements of the federal securities laws, we think that the District Court was completely justified in framing its injunction against Zimmerman in terms of "any issuer."

We also uphold the District Court's use in the injunction of language similar to that of the statutes violated by Zimmerman. As noted earlier, in *McComb* the Supreme Court specifically approved injunctions so worded.[58] The few cases we have found invalidating injunctions utilizing statutory phrasing involved very broad legislative proscriptions, such as Section 2 of the Sherman Act.[59] In the securities field, however, we have not encountered any instances in which a federal appellate court has struck down an injunction formulated in language closely parallelling the statute transgressed by the defendant; indeed, several courts have flatly rejected pleas to do so.[60] While we need not decide whether the language of all sections of the federal securities laws is amenable to reproduction in an injunction, we hold that the statutory wording employed by the District Court in this case is sufficiently specific to pass muster.

Our affirmance of the injunction does not extend, however, to the clause ordering Zimmerman not "to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." [61] This interdiction could embrace nearly any sort of violation of the securities laws, and possibly reach out even beyond the securities area. To allow this

---

55. *NLRB v. Express Publishing Co.*, 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed. 930, 937 (1941). See also *Hillsborough Inv. Corp. v. SEC*, 276 F.2d 665 (1st Cir. 1960); *SEC v. Culpepper*, 270 F.2d 241 (2d Cir. 1959).

56. *Supra* note 28.

57. 458 F.2d at 1102. See also, *e.g.*, *Hillsborough Inv. Corp. v. SEC, supra* note 55, 276 F.2d at 667–668; *SEC v. North Am. Research & Dev. Co.*, 375 F.Supp. 465, 468 (S.D.N.Y.1974), *aff'd*, 511 F.2d 1217 (2d Cir.), *cert. denied*, 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (1975).

58. See text *supra* at notes 51–53.

59. See, *e.g.*, *Schine Chain Theatres, Inc. v. United States*, 334 U.S. 110, 125–126, 68 S.Ct. 947, 955–966, 92 L.Ed. 1245, 1256–1257 (1948); *City of Mishawaka v. American Elec. Co.*, 616 F.2d 976, 991 (7th Cir. 1980), *cert. denied*, 449 U.S. 1096, 101 S.Ct. 892, 66 L.Ed.2d 824 (1981).

60. See, *e.g.*, *Hillsborough Inv. Corp. v. SEC, supra* note 55, 276 F.2d at 667–668; *SEC v. Manor Nursing Centers, Inc., supra* note 28, 458 F.2d at 1103; *SEC v. Keller Corp.*, 323 F.2d 397, 402 (7th Cir. 1963); *United States v. Sherwood*, 175 F.Supp. 480, 482 (S.D.N.Y.1959).

61. *Zimmerman II, supra* note 2, Amended Order at 1, J.App. 167. See text *supra* at note 45. We recognize that this clause resembles somewhat the language of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a) (1976), but its phrasing and placement make it difficult to determine whether this congruity was intended, especially since the § 17(a) charges against Zimmerman were dismissed on remand. See note 24 *supra*. In any event, the injunctive language similar to § 17(a) could be interpreted much more broadly than the statute.

provision to stand could subject to the federal civil contempt power future acts by Zimmerman that may be completely unrelated to his lawbreaking in the past. In short, this part of the injunctive order is in our view " 'so vague as to put the whole conduct of [Zimmerman's] business at the peril of a summons for contempt.' " [62] Consequently, it must be stricken.

## IV. DISPOSITION

For the reasons set forth, the factual findings of the District Court are affirmed. The injunction entered against Zimmerman by the court is modified to eliminate from the first ordering paragraph the words "and to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person." As so modified, the injunctive order is affirmed.

*So ordered.*

**62.** *Hartford-Empire Co. v. United States, supra* note 47, 323 U.S. at 410, 65 S.Ct. at 385, 89 L.Ed. at 360.