**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**GOLDFIELD DEEP MINES COMPANY OF NEVADA, AAA Financial Corporation of Nevada, City Continental Financial, A.G., John C. Rebenstorf, III, C. Orin Swain, Defendants-Appellants.**

No. 83–6442.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1985.

Decided April 19, 1985.

Fred M. Cohen, Ontairo, Cal., for plaintiff-appellee.

Before PREGERSON and REINHARDT, Circuit Judges, and SCHWARZER *.

REINHARDT, Circuit Judge:

Appellants appeal the district court's grant of a permanent injunction enjoining them from engaging in further violations of the registration provisions of the Exchange Act, 15 U.S.C. § 78*l* (g) and SEC Rule 12b–20; the recordkeeping provisions of the Securities Act, 15 U.S.C. § 78m(b)(2); and the antifraud provisions of the Securities Act and the Exchange Act, 15 U.S.C. §§ 77q(a)(1)–(a)(3), 15 U.S.C. § 78j(b), and SEC Rule 10b–5. We affirm.

## I. FACTUAL BACKGROUND

Appellant Goldfield Deep Mines Company of Nevada ("Goldfield") is a publicly-held Nevada corporation. Since 1920, Goldfield has been in the business of mining minerals and precious metals in Nevada, with the exception of the period from 1959 to 1972, during which Goldfield derived its sole income from sales of land and from transfer fees generated by trading of its stock on the over-the-counter exchange.

In 1981, Goldfield began soliciting investors to participate in its ore purchase program. Goldfield claimed to have developed revolutionary technology which economically rendered ore dump material into marketable quantities of gold, silver, platinum and palladium. The ore program was structured such that investors were required to purchase a minimum of 18 tons of ore dump material at $500/ton. The ore was to be processed, refined, stored and marketed by Goldfield unless the investor could find an independent mining contractor to provide those services, in which case the

David A. Sirignano, S.E.C., Washington, D.C., for defendants-appellants.

---

* Honorable William W Schwarzer, District Judge for the Northern District of California, sitting by designation.

investor was required to post a $20,000 bond with Goldfield as "security."

Appellant AAA Financial Corporation of Nevada ("AAA Financial"), a wholly-owned subsidiary of Goldfield, served as Goldfield's transfer agent. AAA Financial also served as agent for City Continental Financial ("CCF"), a purported lending institution which offered financing to investors in the ore purchase program. The purchase required a 15% cash down payment while the remaining balance could be financed with CCF, an organization which later proved to be a nonexistent entity. Goldfield's promotional literature projected a dual benefit from investment in the ore purchase program: the prospect of a 100 per cent return on the original cash investment within one to six years, and the availability of significant tax deductions.

In 1981, Goldfield's assets exceeded $5 million. Goldfield therefore became subject to the registration and reporting requirements of the 1934 Securities Exchange Act, 15 U.S.C. § 78*l*, and Rule 12b–20 promulgated thereunder, 17 C.F.R. 240.-12b–20. Pursuant to these provisions, Goldfield filed a Form 10 registration statement with the Securities and Exchange Commission ("SEC"), describing its management, business activities and its 1980 and 1981 audited financial condition. For the year ending 1981, Goldfield reported income of $5.4 million, which represented a five-fold increase from the previous year. Goldfield also reported total assets of $5.5 million as of December 31, 1981, which was eight times the value of its total assets in the previous year. Over $4 million of Goldfield's reported $5.5 million in assets in 1981 consisted of notes receivable issued to Goldfield by CCF.

On April 1, 1983, the SEC filed a complaint alleging violations of the antifraud, registration and recordkeeping provisions of the federal securities laws and seeking to permanently enjoin appellants from offering or selling Goldfield common stock and interests in the ore purchase program. The complaint named as defendants Gold-

field, AAA Financial and CCF, along with C. Orin Swain ("Swain"), Chairman of the Board and Director of Goldfield, John C. Rebenstorf, III ("Rebenstorf"), President and Director of Goldfield, and Morton Johnson ("Johnson"), Vice-President of CCF and marketing director of AAA Financial.[1] After a six-day evidentiary hearing, the district court granted a preliminary injunction enjoining defendants from further violating the charged provisions of the federal securities laws. The district court also froze all of the funds held in the corporate defendants' bank accounts and ordered Rebenstorf and Swain to disgorge certain Goldfield funds to the court-appointed receiver administering Goldfield's bankruptcy proceedings, which had commenced on April 1, 1983. Rebenstorf failed to comply with the disgorgement order and, on May 10, 1983, the district court found him in contempt. Shortly thereafter, Rebenstorf complied with the order.

On September 28, 1983, subsequent to trial, the district court found that appellants had violated the registration provisions of the Exchange Act, §§ 12(g), 13(b)(2) and Rule 12b–20; the antifraud provisions of the Securities Act, § 17(a), and the Exchange Act, § 10(b), and the recordkeeping provisions of the Securities Act, § 13(b)(2). Accordingly, the court permanently enjoined appellants from any further violations.

## II. ISSUES ON APPEAL

Appellants raise three issues on this appeal. First appellants challenge the district court's conclusion that interests in the ore purchase program constituted "investment contracts" as contemplated by section 2(1) of the 1933 Securities Act, 15 U.S.C. § 77b(1), and section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10). Appellants contend that interests in the ore purchase program were not investment contracts and, accordingly, sale of these interests should not have been subject to regulation under the federal securities laws.

---

1. Johnson is not a party to this appeal.

Second, appellants contend that the district court abused its discretion in granting the permanent injunction. Finally, appellants contend that the district court erred in finding that certain funds transferred to appellant Rebenstorf from Goldfield were, in fact, Goldfield funds. We address each contention separately.

## A. *The Investment Contract Inquiry*

■ We review *de novo* the district court's determination that interests in the ore purchase program constituted investment contracts. *See, e.g., United States v. Jones,* 712 F.2d 1316 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *Mordaunt v. Incomco,* 686 F.2d 815 (9th Cir.1982), *cert. denied,* —— U.S. ——, 105 S.Ct. 801, 83 L.Ed.2d 793 (1985); *Brodt v. Bache & Co., Inc.,* 595 F.2d 459 (9th Cir.1978); *see also United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (application of a rule of law to the established facts is reviewed *de novo* where the question requires consideration of legal concepts in the mix of fact and law, as distinguished from an essentially factual inquiry).

■ Whether the interests in the ore purchase program were investment contracts within the meaning of section 2(1) of the Securities Act, 15 U.S.C. 77b(1) and section 3(a)(10) of the Securities Exchange Act, 15 U.S.C. 78c(a)(10), turns upon whether the program satisfies three elements. First, the program must involve an investment of money. Second, the money must have been invested in a common enterprise. Third, the anticipated profit must come solely from the efforts of others. *Smith v. Gross,* 604 F.2d 639, 642 (9th Cir.1979); *Securities and Exchange Commission v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). Appellants concede that their ore program is an investment of money, but contend that it is not a common enterprise with profits to be derived from their efforts. We disagree.

## 1. *Common Enterprise*

■ A common enterprise is a venture "in which the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.'" *Brodt v. Bache & Co.,* 595 F.2d at 460 (*quoting Securities and Exchange Commission v. Glenn W. Turner Enterprises,* 474 F.2d 476, 482 n. 7 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973); *Mordaunt v. Incomco,* 686 F.2d at 817. It is not necessary that the funds of investors are pooled; what must be shown is that the fortunes of the investors are linked with those of the promoters, thereby establishing the requisite element of vertical commonality. *United States v. Jones,* 712 F.2d at 1321. Thus, a common enterprise exists if a direct correlation has been established between success or failure of Goldfield's efforts and success or failure of the investment. *See Brodt v. Bache & Co.,* 595 F.2d at 461.

■ Here, the investors' fortunes were clearly linked with those of appellants. The ore program required the sharing of profits, in that Goldfield was to receive a 25% royalty fee for processing the investors' ore. Furthermore, the fortunes of both the investors and appellants were dependent upon the success of appellants' unique ore processing technique. If the processing technique were to prove faulty, then both the investors and appellants would suffer financial losses. This direct correlation between Goldfield's potential failure and the investors' losses supports a finding of a common enterprise. *See, e.g., United States v. Carman,* 577 F.2d 556 (9th Cir.1978); *Los Angeles Trust Deed & Mortgage Exchange v. Securities and Exchange Commission,* 285 F.2d 162 (9th Cir. 1960), *cert. denied,* 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). *Cf. Brodt v. Bache & Co.,* 595 F.2d at 461–62.

## 2. *Expectation of Profits Solely from the Efforts of Others*

### (a) *Expectation of Profits*

■ Appellants argue that since the ore purchase program was promoted primarily

for the tax benefits which would accrue as a result of anticipated initial losses, there existed no expectation of profits. However, the prospect of tax benefits resulting from initial losses does not necessarily detract from an expectation of profits. *See Goodman v. Epstein,* 582 F.2d 388, 407 (7th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) (possibility of initial tax losses does not compel a conclusion that investors had insufficient expectation of eventual profit to meet the reasonable expectation of profit requirement); *Securities and Exchange Commission v. Aqua-Sonic Products Corp.,* 687 F.2d 577 (2d Cir.), *cert. denied,* 459 U.S. 1086, 103 S.Ct. 568, 74 L.Ed.2d 931 (1982) (expectation of profit requirement was met even though investment was promoted largely for its tax benefits).[2] Moreover, Goldfield's promotional literature evinced a clear expectation of eventual profit apart from any potential tax benefits. The brochure circulated by Goldfield represented that although the ore program would benefit individual investors' tax programs, it would also provide an "opportunity to profit in the marketing of [the investors'] Gold and Silver." In addition, the brochure represented an "[e]xcellent income potential in GOLD & SILVER in kind, which can be TAX FREE, and which is expected to exceed a 2.11 to 1 return on the original cash outlay within one to six years." Finally, the brochure stated that "[w]e have taken a conservative approach on all of our examples in this presentation and are reasonably assured that a profit will result. Realistically, however, we cannot guarantee you a profit."

It is of added significance that during trial, investors testified that they had enrolled in Goldfield's ore purchase program with the expectation of profit. In light of this testimony and the representations contained in the brochure, we conclude that the ore purchase program satisfied the "expectation of profits" element of the investment contract test.

b. *Profits to Come Solely From the Efforts of Others*

■ The requirement that the expected profit must come solely from the efforts of others is satisfied if "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Smith v. Gross,* 604 F.2d at 642; (quoting *Securities and Exchange Commission v. Glenn W. Turner Enterprises,* 474 F.2d at 482 n. 7). Here, the undeniably significant effort necessary for success in the ore program was that of Goldfield—the provider of what was represented to be the only economically feasible dump ore processing technique. Although investors were permitted to seek the services of other mining companies to process the dump ore, these investors could only do so if they first posted a $20,000 security bond with Goldfield. Furthermore, investors who were interested in hiring another company to mine the ore were informed by Rebenstorf that no independent contractor would process the small quantity of ore owned by each investor. Thus, as a practical matter, the investors were forced to rely exclusively upon the services of Goldfield. It is therefore apparent that the expectation of profit was predicated on the efforts of Goldfield.

**2.** We note that appellant's reliance on *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) is misplaced. In *Forman,* the Court held that tenants' interests in a housing cooperative which were explicitly tied to specific apartments and which could not be transferred, pledged, or encumbered, were *not* "securities" within the meaning of the federal securities laws. The Court concluded that since investors were attracted solely by the prospect of acquiring a place to live and not by financial returns on their investments, the interests could not be properly characterized as investment contracts. In reaching its conclusion, the Court noted that the deductibility of mortgage interest payments did not constitute income or profits and, accordingly, the investors could not have had an expectation of profit. However, where, as here, the evidence supports a finding of an expectation of profit independent of anticipated initial tax benefits, we do not view *Forman* as controlling.

Since the ore purchase program involved a common enterprise in which investors expected to derive profits from the efforts of Goldfield, and since appellants concede that the program was an investment for money, we hold that the interests in the ore purchase program constituted investment contracts within the meaning of the federal securities laws. We therefore affirm the district court's finding on this issue.

### B. *Appellants' Challenge to the Permanent Injunction*

 The granting or denying of injunctive relief rests within the sound discretion of the trial court. *Securities and Exchange Commission v. Arthur Young & Co.,* 590 F.2d 785, 787 (9th Cir.1979) (quoting *Securities and Exchange Commission v. MacElvain,* 417 F.2d 1134, 1137 (5th Cir.1969), *cert. denied,* 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970)). Accordingly, we review the district court's grant of permanent injunctive relief for an abuse of discretion or for application of an erroneous legal principle. *Long v. United States Internal Revenue Service,* 693 F.2d 907, 909 (9th Cir.1982); *Washington State Farm Bureau v. Marshall,* 625 F.2d 296, 302 (9th Cir.1980).

Appellants challenge the district court's grant of a permanent injunction on three grounds. First, appellants contend that the district court abused its discretion by relying, in part, on an erroneous finding of scienter with respect to the alleged violations of section 17(a)(1) of the Securities Act, section 10(b) of the Exchange Act, and Rule 10b–5, promulgated thereunder.[3] Second, appellants contend that the district court applied an incorrect legal standard in finding that appellants had failed to disclose certain information pursuant to 17 C.F.R. § 229.401. Third, appellants contend that the trial court abused its discretion by failing to acknowledge appellants' "good faith" defenses to the charges of nondisclosure.

### 1. *Proof of Scienter*

 We review the district court's findings that Rebenstorf and Swain acted with the requisite scienter under the clearly erroneous standard. *See United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984) (Mixed questions of fact and law in which the applicable legal standard provides for a strictly factual test, such as state of mind, involves an essentially factual inquiry which should be reviewed under the clearly erroneous standard).

 In light of the evidence in the record, we are unable to conclude that the

**3.** Section 17(a)(1) of the Securities Act provides:
(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud...
15 U.S.C. § 77q(a)(1) (1982).
Section 10(b) of the Exchange Act provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j(b) (1982).
Rule 10b–5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5 (1984).

district court's findings of scienter were clearly erroneous. The record discloses representations by Goldfield in its promotional literature that CCF was a lending institution incorporated in Lichtenstein with offices located in Zurich, Switzerland, which would provide investors with the necessary financing. However, evidence adduced at trial provided strong indications that CCF never existed.[4] Inquiries placed with the Swiss Registry of Trade and other sources failed to establish the existence of CCF business offices in Zurich. Telephone calls placed to a Las Vegas, Nevada listing for CCF were redirected to Goldfield's San Bernardino, California offices. However, no company by that name was licensed to do business in Nevada or California.

In addition, Goldfield's 1982 Form 10 registration statement reported assets of approximately $5.5 million, over $4 million of which was derived from CCF notes receivable. Accordingly, 85 percent of Goldfield's balance sheet assets were worthless. Goldfield's Form 10 also stated that none of its officers or directors would receive remuneration in excess of $50,000 during that fiscal year. Three months later, however, appellant Swain verified that Rebenstorf received an annual compensation package in excess of $95,000. The evidence indicates that Swain also received annual compensation well in excess of $50,000.

In our view, the evidence in the record provides substantial support for the district court's finding that appellant's misconduct was "knowing or intentional." *See Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 690, 100 S.Ct. 1945, 1952, 64 L.Ed.2d 611 (1980). Since we are unable to find that the district court's determination was clearly erroneous, its finding of scienter does not provide a basis upon which to conclude that it abused its discretion in issuing a permanent injunction.

### 2. *Appellants' Challenge to the Legal Standard Applied by the District Court in Finding a Violation of 15 U.S.C. § 78l(g)*

Appellants contend that in finding a violation of 15 U.S.C. § 78l (g) the district court erroneously applied the statute. Appellants argue that the district court found a violation of this statute based upon Goldfield's nondisclosure of certain items which, according to appellants, need not have been disclosed. We find appellants' argument meritless.

A Form 10 registration statement must disclose, *inter alia,* criminal convictions entered against the registrant's officers and court or administrative judgments relating to violations of federal or state securities laws by the registrant's officers, provided that the convictions or civil judgments constitute material information. *See* 17 C.F.R. § 229.401(f) (1984). This disclosure provision excludes all convictions and orders entered more than five years preceding the date of filing. Appellants argue that the district court based its finding of a violation upon Goldfield's nondisclosure of certain legal proceedings which were older than five years—specifically, Rebenstorf's 1964 Illinois embezzlement conviction and his 1976 violation of various California securities laws. Although appellants do not contest the materiality of these proceedings, they argue that the proceedings need not have been disclosed pursuant to 17 C.F.R. § 229.401.

■ A review of the district court's findings reveals that its determination that appellants violated 15 U.S.C. § 78l (g) was *not* based upon their failure to disclose these two proceedings. In fact, the district court's findings of fact and conclusions of law do not mention these two proceedings

---

**4.** In fact, the evidence indicates that appellants made affirmative efforts to establish CCF as a phantom corporation. In late December and early January 1983, Morton Johnson, vice-president of CCF and marketing director of Goldfield's wholly-owned subsidiary AAA Financial, wired an individual in Zurich requesting that an office with limited telephone and Telex services be established for CCF. Johnson explained that he anticipated only two dozen telephone calls per year and requested that a telephone answering service forward the callers' names and addresses to Goldfield.

at all. Rather, the district court's finding of a violation was based upon appellants' failure to disclose other material information, including certain legal proceedings which took place within five years of the filing date. We therefore conclude that the district court did not err in its application of 15 U.S.C. § 78*l* (g).

### 3. *Appellants' Reliance on Professional Assistance—Good Faith Defenses*

Appellants also contend that the district court abused its discretion in granting the permanent injunction because the court failed to acknowledge appellants' good faith defense that their Form 10 omissions were based upon the advice of counsel and representations of accountants. Appellants Rebenstorf and Swain argue that their reliance on the professional assistance of an accountant provides a good faith defense to a charge of filing false and misleading financial statements.

 Under the circumstances of this case, we are unable to credit appellants' argument. "If a company officer knows that the financial statements are false or misleading and yet proceeds to file them, the willingness of an accountant to give an unqualified opinion with respect to them does not negate the existence of the requisite intent or establish good faith reliance." *United States v. Erickson*, 601 F.2d 296, 305 (7th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406 (1979). Here, as discussed above, the evidence fully supports the district court's conclusion that appellants Rebenstorf and Swain knew that the financial statements were false or misleading. Accordingly, appellants' good faith defense does not stand.

 Rebenstorf and Swain also argue that their reliance on the advice of counsel provides a good faith defense to charges of failing to disclose pertinent legal proceedings which occurred within five years of filing their Form 10. However, in order to establish good faith reliance on the advice of counsel, appellants must show that they (1) made a complete disclosure to counsel; (2) requested counsel's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that advice. *Securities and Exchange Commission v. Savoy Industries, Inc.*, 665 F.2d 1310, 1314 n. 28 (D.C.Cir.1981).

 Except for testimony concerning the nondisclosure of legal proceedings more than five years old, a matter not here at issue, appellants failed to offer any evidence to establish their defense of good faith reliance on advice of counsel. Even if appellants had established a claim of reliance, "such reliance does not operate as an automatic defense, but is only one factor to be considered in determining the propriety of injunctive relief." *Id.* In light of Rebenstorf's and Swain's scienter in filing false and misleading financial statements, the district court did not abuse its discretion in concluding that a permanent injunction was appropriate. *See Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1101 (2d Cir.1972) ("While good faith reliance on advice of counsel may be a factor to consider in deciding whether to grant injunctive relief, appellants' proven lack of good faith here precludes them from relying on this argument."); *Cf. United States v. Manning*, 509 F.2d 1230, 1234 (9th Cir. 1974), *cert. denied sub nom. Wooldridge v. United States*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975) (where defendants' actions negatived any claim that they thought they were acting lawfully, and where defendants did not treat counsel as an independent, unbiased legal adviser, defense of reliance on counsel was not available); *Securities and Exchange Commission v. Bonastia*, 614 F.2d 908, 914 (3d Cir.1980) (good faith reliance on advice of counsel not available as a defense to violations of securities laws in light of (1) high ranking positions held by defendant in various companies engaged in wrongdoing and (2) specific findings of scienter).

### C. *Disgorgement of Corporate Assets*

Finally, Rebenstorf contends that the district court clearly erred in its factual find-

ing that the $146,337 which he withdrew from Goldfield and AAA Financial bank accounts was corporate property. Rebenstorf asserts that these withdrawals, which took place one day before the SEC filed its complaint, were merely payments on a series of promissory notes previously issued to him by Goldfield in lieu of cash compensation for services rendered to Goldfield during the company's "cash-poor" days in 1974.

■ The evidence in the record establishes that the district court's finding was not clearly erroneous. One of the notes, purportedly issued in 1974, had a face value of $110,000. However, the work papers prepared by Goldfield's auditors as of September 30, 1975 stated liabilities to officers in the amount of only $33,803. Moreover, while the promissory notes to Rebenstorf were signed by both Rebenstorf and Swain in their capacity as officers, they did not hold the offices in question at the time the notes were allegedly issued. In addition, Rebenstorf withdrew $133,138 of the $146,-337 from AAA Financial bank accounts. However, there is no evidence in the record that AAA owed Rebenstorf any overdue compensation. Finally, since the testimony offered by Rebenstorf and Swain concerning execution of the notes was inconsistent with testimony they had offered during the prior hearing on the preliminary injunction, the district court found their testimony incredible, a finding which we accept as correct. *See Dunn v. Trans World Airlines*, 589 F.2d 408, 414 (9th Cir.1978); *DeWelles v. United States*, 378 F.2d 37, 39 (9th Cir.), *cert. denied*, 389 U.S. 996, 88 S.Ct. 501, 19 L.Ed.2d 494 (1967).

In light of this evidence, the court's finding that the notes were executed in 1983 "as a ruse to milk the cash from the Goldfield and AAA Financial bank accounts" was not clearly erroneous. We therefore affirm the district court's finding.

### III. CONCLUSION

We conclude that (1) the district court properly found the interests in the ore purchase program to be investment contracts;

(2) the district court's grant of a permanent injunction was neither an abuse of discretion nor the result of the application of an erroneous legal standard; and (3) the district court's finding that funds withdrawn by Rebenstorf from Goldfield and AAA Financial bank accounts actually belonged to the corporation was not clearly erroneous. We therefore affirm the district court's judgment.

AFFIRMED.