Stuart K. PATRICK, Petitioner,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 866, Docket 93–4148.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1994.

Decided Jan. 19, 1994.

Publication Ordered March 22, 1994.

---

Martin I. Kaminsky, New York City (W. Hans Kobelt, Pollack & Kaminsky, New York City, of counsel), for petitioner.

Katharine B. Gresham, Asst. Gen. Counsel, S.E.C., Washington, DC (Jacob H. Stillman, Associate Gen. Counsel, William F. Johnson, Attorney, S.E.C., Washington, DC, of counsel), for respondent.

Before: MINER and MAHONEY, Circuit Judges and RESTANI,* Judge.

PER CURIAM:

## I.

Petitioner Stuart K. Patrick petitions this Court for review of a May 17, 1993 order of the Securities and Exchange Commission ("SEC") sustaining sanctions imposed on him by the New York Stock Exchange (the "Exchange"), the SEC having found that Patrick, the president of a broker-dealer, failed to discharge his duty to supervise his firm's trader. For the reasons that follow, we affirm the order of the SEC.[1]

At all relevant times, Patrick was the President and CEO of Baird, Patrick & Co., a broker-dealer and a member firm of the Exchange. Christian Keller was a vice president in charge of trading for the firm on the floor of the Exchange. Under the firm's organizational structure, Keller reported only to Patrick, or, in his absence, to Patrick's father, the chairman of the board. Between January and June of 1988, Keller initiated numerous trades on the floor of the Exchange for Baird, Patrick's proprietary account that violated Exchange rules designed to prevent members from gaining an advantage over brokerage customers when trading on their own accounts.

In August of 1990, the Exchange's Division of Enforcement charged Patrick with violating New York Stock Exchange Rule 342(a)[2] by failing to discharge his duties and obli-

---

* Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation.

1. Our decision on this appeal originally appeared in an unpublished summary order. The SEC subsequently moved to have the decision published. Because we agree with the SEC that this decision will have some precedential value, we have decided to publish it with some minor revisions.

2. Rule 342(a) provides, in pertinent part:

> The person in charge of a group of employees shall reasonably discharge his duties and obligations in connection with supervision and control of the activities of those employees related to the business of their employer and compliance with securities laws and regulations.

gations reasonably in connection with the supervision and control of Keller's trading activities. In an April 11, 1991 decision, rendered after a hearing, an Exchange hearing panel (the "Panel") exonerated Patrick from liability under Rule 342(a). In its decision, the Panel found that Baird, Patrick "did not have clear lines of responsibility for its officers," and that, as a result, Keller went unsupervised during the six-month period in question. The Panel went on to state that Patrick, as president and CEO, "did not take sufficient general authority to assure that the Firm's management structure provided for such supervision," and that "it appears that [Patrick] believed he had no day-to-day role in the Firm's operations; he seems to have assumed that the Treasurer of the Firm bore primary responsibility in that area. This was too lax a view of managerial responsibility." Patrick does not dispute these findings. Despite its view of the facts, the Panel concluded that Patrick "cannot be held to the specific failure to supervise that was the subject of this hearing."

The Division of Enforcement sought review of the Panel's decision with the Exchange's Board of Directors (the "Board"). The Board reversed the decision of the Panel, censured Patrick and suspended him for one week from employment with Exchange members. In its decision, which was supplemented at the request of the SEC, the Board concluded that the Panel had "applied the wrong standard to the facts in the evidentiary record" and that there was ample evidence in the record to support a finding that Patrick violated Rule 342(a).

Patrick sought review by the SEC of the Board's determination. In a May 17, 1993 opinion and order, the SEC upheld the Board's determination. The SEC stated that, as Keller's direct superior, Patrick maintained supervisory responsibilities over Keller. The SEC noted that Rule 342(a) not only imposes obligations on direct supervisors, but also imposes "oversight duties on officials, including the president, who are in charge of employees and activities within the firm." The SEC rejected Patrick's contention that he had discharged his duty by delegating responsibility to Keller, a senior officer. The SEC reasoned that Patrick had a duty to follow up on any delegation of duties, which he failed to do. The SEC next rejected Patrick's contention that he had been denied due process because the Board had implicitly held him liable under Rule 342(b), which imposes an obligation on directors and partners to provide for appropriate supervisory control within their organization to ensure compliance with the securities laws.[3] The SEC reasoned that Patrick's duties under Rule 342(a) included the duty to establish proper procedures and that the mere fact that a more specific rule applied did not make the general rule inapplicable. The SEC also reasoned that Patrick's liability flowed primarily from his failure to exercise his duties as Keller's immediate superior, duties which fall squarely within Rule 342(a). On July 13, 1993, Patrick petitioned this Court for review of the SEC's order.

## II.

■ Patrick's main contention in his petition for review is that his conduct in this case, if it is actionable at all, falls within the provisions of Rule 342(b) rather than Rule 342(a), and that he was denied due process when he was sanctioned without having been charged under Rule 342(b). We are in agreement with the SEC that Patrick's conduct with regard to Keller violated Rule 342(a), and Patrick accordingly was not deprived of due process. A plain reading of these sections reveals that Rule 342(b) obligates a firm to set up a chain of command to ensure supervision, follow-up and review of

---

3. Rule 342(b) provides:

The general partners or directors of each member organization shall provide for appropriate supervisory control and shall designate a general partner or principal executive officer to assume overall authority and responsibility for internal supervision and control of the organization and compliance with securities laws and regulations. This person shall:

(1) delegate to qualified principals or employees responsibility and authority for supervision and control of each office, department or business activity, and provide for appropriate procedures of supervision and control.

(2) establish a separate system of follow-up and review to determine that the delegated authority and responsibility is being properly exercised.

employee activities. Within a chain of command, each individual will of course be responsible for those who serve under him, and Rule 342(a) imposes an obligation upon such an individual to supervise the activity of those of whom he is "in charge." For high-level officers, this supervisory role naturally includes overseeing the supervision of other individuals down the chain of command. Patrick's argument that Rule 342(a) only applies to direct supervisors is simply inaccurate; as president, Patrick was "in charge" of all the employees in the firm. Indeed, the SEC has held that the president of a broker-dealer " 'is responsible for compliance with all of the requirements imposed on his firm unless and until he reasonably delegates particular functions to another person in that firm, and neither knows nor has reason to know that such person's performance is deficient.' " *In re Kochcapital, Inc.*, Sec. Exch. Act Rel. No. 31652 (Dec. 23, 1992), 53 SEC Docket 205, 210 n. 18 (quoting *In re Universal Heritage Invs. Corp.*, 47 S.E.C. 839, 845 (1982)).

Patrick does not dispute the fact that he had overall responsibility for the firm's affairs, and it appears from the record that Keller reported directly to Patrick on a limited aspect of Baird, Patrick's proprietary account. Moreover, Patrick does not deny that there was nobody else to whom Keller reported. While the firm had a responsibility under Rule 342(b) to provide for an adequate command structure, it was Patrick's duty under Rule 342(a) to oversee the implementation of that structure. By completely failing to provide for supervision of Keller's trading, both the firm and Patrick failed in their responsibilities. In addition, as Keller's direct corporate superior, Patrick had a duty either to supervise him directly or to oversee his supervision by others. Patrick adamantly asserts that he did not directly supervise Keller's trading. But he also did not ensure that others did supervise Keller. By failing to delegate Keller's supervision to someone else, Patrick himself became responsible for the supervision. The Panel concluded that Patrick believed that Jack Glynn, the firm's treasurer, was responsible for monitoring Keller's trading. Even if this is so, the complete lack of supervision of Keller indicates that Patrick did not exercise the necessary oversight.

From the foregoing, it is clear that Patrick properly was held responsible for violating Rule 342(a). Patrick's argument that a president cannot be held liable for the actions of his employees on the trading floor is without merit. Patrick cites to cases in which the president of the firm was not held responsible for wrongdoing on the trading floor. In each of these cases, however, the president simply was not charged; neither case holds that the president was not responsible for the wrongdoing. *See In re Shearson Lehman Bros., Inc.*, Exch. Hearing Panel Dec. 90–48 (NYSE May 7, 1990); *In re Prudential–Bache Secs., Inc.*, Exch. Hearing Panel Dec. 90–121 (NYSE Sept. 6, 1990).

## III.

The petition for review of the order of the Securities and Exchange Commission is denied.