VALICENTI ADVISORY SERVICES,
INC. and Vincent R. Valicenti,
Petitioners,

v.

SECURITIES AND EXCHANGE
COMMISSION, Respondent.

Docket No. 99–4002

United States Court of Appeals,
Second Circuit.

Argued: Sept. 8, 1999

Decided: Nov. 30, 1999

As Amended Feb. 9, 2000.

Rehearing and Rehearing En Banc
Denied Feb. 24, 2000.

Steven E. Cole, Wolford & Leclair LLP, Rochester, New York (Michael R. Wolford, Wolford & Leclair LLP, Rochester, New York, of counsel), for petitioners.

Mark Pennington, Securities and Exchange Commission, Washington D.C. (Harvey J. Goldschmid, General Counsel, Jacob H. Stillman, Solicitor, Robert C. Stacy II, Attorney, David M. Becker, Deputy General Counsel, Securities and Exchange Commission, Washington, D.C., of counsel), for respondent.

Before: FEINBERG, CALABRESI and SOTOMAYOR, Circuit Judges.

PER CURIAM.

Petitioners Valicenti Advisory Services, Inc. ("VAS") and Vincent R. Valicenti appeal from an opinion and order of the Securities and Exchange Commission ("SEC" or "Commission") finding that

VAS, aided and abetted by Valicenti, willfully violated various anti-fraud provisions of the Investment Advisers Act ("IAA"), 15 U.S.C. § 80b–1 *et seq.* (1994 & Supp.1999), and imposing various sanctions. For the reasons to be discussed, we affirm.

## BACKGROUND

Valicenti is the president and sole owner of VAS, an advisory organization registered with the SEC. Throughout 1992, petitioners distributed a packet of marketing materials to prospective clients. That packet contained a chart developed by petitioners which purported to show VAS's rates of return on its "Total Portfolio" between 1987 and 1991 (the "Chart"). On the Chart, a footnote next to "Total Portfolio" indicated that the displayed figures represented a "composite of discretionary accounts with a balanced objective."[1]

In December 1993, the SEC commenced an inspection of VAS, at which time the Commission became aware of the Chart. The SEC found the Chart to be materially misleading because: (1) a reasonable investor would have understood a "composite" to include *all* "discretionary accounts with a balanced objective"; (2) the Chart reflected the performance of only a selected *portion* of VAS's "balanced" accounts; and (3) the rate of return ("ROR") for 1991 indicated on the Chart was more than seven percentage points higher than it would have been had the Chart incorporated all of VAS's balanced accounts for that year.

The Commission also found that petitioners acted with a deliberate intent to defraud. In so finding, the Commission relied upon the following facts:

- Valicenti rejected recommendations by the VAS marketing manager that the Chart disclose more information, including, *inter alia*, methodology, the number of accounts reflected in the Chart, and

1. Discretionary accounts are those accounts over which VAS exercised full discretionary authority because the clients had placed no restrictions on their management.

the value of the largest and smallest accounts.

● Valicenti included in the Chart only a small and distorted subset of balanced accounts. Specifically:

(1) Valicenti excluded from the Chart accounts valued under $100,000. The Chart did not mention this exclusion, even though 27% to 45% of VAS's balanced accounts between 1987 and 1991 were valued under $100,000.

(2) After reviewing a preliminary calculation that reflected an overall performance of –0.84% for 1987, Valicenti directed the VAS marketing manager to exclude from the final calculation six accounts with negative RORs for that year and to add two other accounts that had performed positively that year. As a result of these changes, the total performance figure for 1987 went from − 0.84% to + 2.60%.

● Valicenti included accounts that fell outside his definition of a "balanced" account, i.e., the equity portion of the account be no greater than 70% and no less than 30%.[2]

● Valicenti created and distributed in the marketing packet another document containing a bar graph that distorted VAS's performance relative to other investment advisers by using data that were not comparable.[3]

Accordingly, the SEC found that both petitioners had violated § 206(1), § 206(2),

and § 206(4) of the IAA, 15 U.S.C. §§ 80b–6(1), 80b–6(2), 80(b)–6(4), as well as SEC Rule 206(4)–1(a)(5), 17 C.F.R. § 275.206(4)–1(a)(5).[4] In light of these findings, the SEC sanctioned petitioners with a censure, a cease and desist order, and fines of $50,000 against VAS and $25,000 against Valicenti. The Commission also required petitioners to send copies of the Commission's opinion and order to all existing clients of VAS and, in the following year, to all prospective clients.

Valicenti and VAS petition this court for review of the SEC's opinion and order pursuant to 5 U.S.C. §§ 702–706 (1994) and 15 U.S.C. § 80b–13 (1994). They argue that the evidence in the record is insufficient to support either the finding of scienter or the finding that the Chart was materially misleading. They also argue that the finding that petitioners violated the securities laws offended due process, because they had insufficient notice that their conduct was unlawful. Finally, petitioners argue that the sanctions exceeded the SEC's statutory authority and constituted an abuse of discretion. For the reasons that follow, we reject these arguments.

## DISCUSSION

In reviewing the SEC's opinion and order, we must affirm "[t]he findings of the Commission as to the facts, if supported by substantial evidence." 15 U.S.C. § 80b–13(a). The "traditional standard used for judicial review of agency actions . . . is

---

2. In a letter to the Commission, Valicenti explicitly defined a "balanced" account as an account with an asset mix ranging from 70% equity and 30% fixed income to 30% equity and 70% income ("the 70/30 definition"). He later testified, however, that the 70/30 definition was a "guideline" and that a "balanced" account was defined in terms of its investment objectives instead of its asset mix.

3. Valicenti does not appeal this particular finding.

4. Section 206(1) prohibits the "employ[ment of] any device, scheme, or artifice to defraud any client or prospective client." 15 U.S.C.

§ 80b–6(1). Section 206(2) makes unlawful "any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. § 80b–6(2). Section 206(4) proscribes "any act, practice, or course of business which is fraudulent, deceptive, or manipulative" and provides that the SEC shall promulgate rules thereunder. 15 U.S.C. § 80b–6(4). SEC Rule 206(4)–1(a)(5), promulgated pursuant to § 206(4), prohibits the publication of any advertisement "[w]hich contains any untrue statement of a material fact, or which is otherwise false or misleading." 17 C.F.R. § 275.206(4)–1(a)(5).

deferential, and we may neither engage in our own fact-finding nor supplant the [SEC's] reasonable determinations." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir.1999) (citation and internal quotation marks omitted).

I. *Scienter*

 Whether petitioners acted with the requisite mental state is a question of fact. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 194 (2d Cir.1998). "Proof of scienter" under the securities laws "need not be direct, but may be 'a matter of inference from circumstantial evidence.'" *Wechsler v. Steinberg*, 733 F.2d 1054, 1058 (2d Cir.1984) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n. 30, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (stating that, in securities fraud cases, a "'strong inference' of fraud may be established ... [from] circumstantial evidence of conscious misbehavior or recklessness").

 Petitioners mount a misguided effort to attack the evidence on which the Commission relied in finding that petitioners acted with deliberate intent to defraud.[5] For example, they downplay the significance of Valicenti's decision to reject the marketing manager's recommendations that the Chart provide greater disclosure, by emphasizing that the recommended disclosures are nowhere required by law. They also contend that, because Valicenti's decision to include and exclude certain accounts resulted in only a small increase in reported performance for just one of the displayed years, his selective inclusion and exclusion of accounts must not have been motivated by an intent to

defraud investors. Furthermore, they point to facts from which petitioners' good faith might be inferred, e.g., that on occasion they more accurately described the Chart to prospective clients as being "based on a sampling of portfolios" or that Valicenti decided not to distribute an updated Chart depicting portfolio performances for 1988–1992 because he was concerned about its accuracy.

These arguments, however, misapprehend the nature of our review of an administrative agency's decision. Petitioners essentially argue that this court should draw inferences from the evidence contrary to those drawn by the Commission. In other words, they ask us to "supplant the [administrative agency's] reasonable determinations." *Cellular Tel.*, 166 F.3d at 494. But based on the record—which shows that Valicenti consciously rejected his marketing manager's recommendations to provide more disclosure, chose to exclude accounts valued under $100,000 because of their higher transactional costs, decided to add accounts with positive RORs, struck from the list accounts with negative RORs, and created another document which inflated VAS's performance relative to other investment advisers—we cannot say that the SEC lacked "such relevant evidence as a reasonable mind might accept as adequate to support [its] conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)) (internal quotation marks omitted). We thus uphold the SEC's finding of scienter.

II. *Materiality*

 Petitioners also argue that the Chart was not materially misleading be-

---

**5.** We note that at least two circuits have held that § 206(1) of the IAA requires a finding of fraudulent intent. *See SEC v. Steadman*, 967 F.2d 636, 641 & n. 3 (D.C.Cir.1992); *Steadman v. SEC*, 603 F.2d 1126, 1134 (5th Cir. 1979), *aff'd on other grounds*, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981); *see also Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 677–78 (11th Cir.1988) (per curiam) (relying

on, *inter alia*, the Fifth Circuit's decision in *Steadman* to find scienter requirement in another anti-fraud provision of the securities laws containing language parallel to that of § 206(1)). Because we uphold the Commission's finding of intent to defraud with respect to each violation, however, we do not need to reach the question of whether § 206(1) imposes such a scienter requirement.

cause Valicenti's decision to exclude and include various accounts resulted in, by their tally, a change in VAS's overall performance figure of no more than 1% for 1987 and 0.22% over the five years of performance presented in the Chart. Such differences, they argue, would not be material to the reasonable investor. *See Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir.1999) (noting that "material" information under the securities laws is "information that would have assumed actual significance in the deliberations of the reasonable [investor]") (citations and internal quotation marks omitted).

The SEC points out, however, that although the Chart reflected an ROR for 1991 of 27.89%, all of VAS's 122 balanced accounts for that year reflected a total ROR of 20.63%. The Commission found the discrepancy of seven percentage points in the ROR reported for 1991 to be "[m]ost significant" and therefore sufficient to establish the materiality of the Chart's misrepresentation. We will not supplant the SEC's reasonable decision to rely upon such data. *See Cellular Tel. Co.*, 166 F.3d at 494. Even petitioners do not claim that a 7% disparity would not be material. We therefore affirm the Commission's finding that the Chart was materially misleading.

### III. *Due Process*

■ Petitioners next contend that it violates due process to hold that they violated the securities laws. They assert that, because the SEC has not promulgated regulations articulating specific standards for performance advertising, they did "not receive[ ] fair notice of [what constitutes] a regulatory violation." *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir.1996). Due process requires, however, only that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.* (citing *Grayned v. City of*

*Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Here, the SEC sanctioned petitioners for intentionally misrepresenting past performance. Neither VAS, a registered investment adviser, nor Valicenti, who has worked in the investment industry since 1967, can credibly claim lack of fair notice of the proscription against defrauding investors. Their due process claim therefore lacks merit.

### IV. *Sanctions*

■ Petitioners challenge the SEC's imposition of monetary sanctions, the issuance of a cease and desist order, and the requirement that current and future clients be provided with a copy of the Commission's opinion and order ("the distribution requirement").[6] We review the Commission's imposition of sanctions for abuse of discretion. *See Markowski v. SEC*, 34 F.3d 99, 105 (2d Cir.1994).

■ We will find an abuse of discretion if the sanctions imposed are either unwarranted in law or without justification in fact. *See United States v. International Bhd. of Teamsters*, 170 F.3d 136, 144 (2d Cir.1999) (citation omitted). The sanctions imposed in this case are both within the SEC's statutory authority and justified under the circumstances. The Commission is empowered to assess monetary penalties of $50,000 against a natural person or $250,000 against a company for willful and fraudulent violations of the IAA. 15 U.S.C. § 80b–3(i)(2)(B) (1994). The Commission may also issue cease and desist orders that would "require [a violator] to comply, or take steps to effect compliance" with the provisions they violated. 15 U.S.C. § 80b–3(k)(1) (1994). Moreover, the Commission is empowered to "place limitations on the activities" of violators, suspend them for up to twelve months, or bar them entirely from the investment advising business. 15 U.S.C. § 80b–3(e), (f) (1994 & Supp.1999). In determining

---

**6.** Petitioners have waived any challenge to the censure sanction by apparently conceding that it would have been appropriate upon a finding of negligence. Accordingly, it is also appropriate upon a finding of more serious misconduct, *i.e.,* fraud.

whether to impose statutorily authorized monetary penalties, the Commission is to consider "whether the act or omission for which such penalty is assessed involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 80b–3(i)(3)(A) (1997). With respect to cease and desist orders, the Commission is authorized to impose such an order "as the Commission deems appropriate" to effect a violator's compliance with the statute. 15 U.S.C. § 80b–3(k)(1). As for other "limitations" on activities, the statute provides that the Commission shall impose such sanctions if it finds that any violation of the IAA was done willfully. 15 U.S.C. § 80b–3(e)(5) (1994). Having upheld the SEC's finding that petitioners acted with an intent to defraud, we conclude that the monetary sanctions, the cease and desist order, and the distribution requirement were all justified under the circumstances.

Petitioners argue further that the Commission abused its discretion by imposing the distribution requirement because the imposition of such a sanction was "excessive" and "bore no rational relationship to the violations found." Although we recognize that the imposition of a sanction that is "palpably disproportionate to the violation" may be an abuse of discretion, *see Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 124 (2d Cir.1999), the distribution requirement here was rationally connected to the particular conduct at issue, *see id.* As we observed above, the IAA authorizes the SEC to "place limitations on the activities" of violators of the statute. 15 U.S.C. § 80b–3(e), (f). We see no reason why the distribution requirement might not be an appropriate and reasonable "limitation" in certain circumstances. In this regard, we note that the IAA explicitly permits the imposition of sanctions that are plausibly *more severe* than the distribution requirement, including revocation of the petitioners' registration and suspension for up to 12 months, *see id.*, each of which would likely result in greater loss of income and stigmatization than having to furnish copies of the SEC's opinion and order to existing and prospective clients for one year.

Moreover, the SEC has provided at least two reasonable explanations justifying the imposition of the distribution requirement as a reasonable "limitation" on petitioners' investment adviser activities. First, the distribution requirement will apprise present and prospective clients of the Commission's findings so that these investors may be fully informed in deciding whether they wish to do business with petitioners. Second, the distribution requirement may discourage petitioners from committing further violations. Given the serious nature of the petitioners' violations, we cannot deny that the distribution requirement is a rational means to alert actual and prospective clients of petitioners' misconduct and to discourage any further such conduct. *See Reddy*, 191 F.3d at 124 ("[S]o long as an agency has articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made, we will uphold its choice of sanctions.") (citations and internal quotation marks omitted); *County Produce, Inc. v. United States Dep't of Agric.*, 103 F.3d 263, 266 (2d Cir.1997) (noting the "fundamental principle that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy[,] the relation of remedy to policy is peculiarly a matter for administrative competence") (citation and internal quotation marks omitted).

Finally, petitioners argue that the distribution requirement was an abuse of discretion because the Commission has never before imposed such a sanction against an investment adviser in a litigated case. The Commission, however, has previously imposed sanctions similar to the distribution requirement here in investment adviser advertising cases that have been settled. *See, e.g., In re Consolidated Fin. Advisors, Inc.*, 65 SEC Dkt. 1414 (Sept. 26, 1997); *In re Wall Street Money Mgmt. Group, Inc.*, 58 SEC Dkt. 1953 (Jan. 30, 1995); *In re Harvest Fin. Group*, 42 SEC Dkt. 1327 (Feb. 21, 1989); *In re Blue Chip Market Advisor, Inc.*, 44 SEC Dkt. 1467 (Oct. 25, 1989). We find no indication that the SEC singled out petitioners for particularly severe punishment. *Cf. Winkler v. SEC*, 377

F.2d 517, 518 (2d Cir.1967) (warning that the court must be "watchful" of whether sanctions have been applied in an "unduly harsh" or "discriminatory" manner). Moreover, petitioners have not identified any particular instances in which persons who intentionally misled their clients received more lenient treatment. Accordingly, we find that the sanctions imposed by the Commission do not constitute an abuse of discretion.

## CONCLUSION

Having reviewed the record and examined petitioners' arguments and having found those arguments to be without merit, we affirm the opinion and order of the Securities and Exchange Commission.