Anthony A. ADONNINO and Thomas Cannizzaro, Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

No. 03–41111.

United States Court of Appeals, Second Circuit.

Sept. 22, 2004.

David M. Sobel, The Goldstein Law Group, P.C., New York, NY, for Petitioners.

Mark Pennington, for The Securities and Exchange Commission (Giovanni P. Prezioso, Eric Summergrad, Mark Pennington, and Meyer Eisenberg, on the brief), Washington, DC, for Respondent.

Present: NEWMAN, MINER, and KATZMANN, Circuit Judges.

## SUMMARY ORDER

Petition for review of an order.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the Securities and Exchange Commission be and hereby is **AFFIRMED.**

Petitioners Anthony Adonnino and Thomas Cannizzaro, members of the New York Stock Exchange ("NYSE"), were disciplined for violations of the Securities Exchange Act of 1934 and NYSE rules, including engaging in discretionary trading, making misstatements to the NYSE, doing

business with a public customer, and failing to supervise. A disciplinary panel of the NYSE imposed sanctions, which the Securities and Exchange Commission ("SEC") upheld. This petition for review followed. The parties' familiarity with the facts and the procedural background is assumed.

In reviewing decisions of the SEC, "we must affirm [t]he findings of the Commission as to the facts, if supported by substantial evidence. The traditional standard used for judicial review of agency actions ... is deferential, and we may neither engage in our own fact-finding nor supplant the [SEC's] reasonable determinations." *Valicenti Advisory Servs., Inc. v. Sec. & Exch. Comm'n*, 198 F.3d 62, 64–65 (2d Cir.1999) (per curiam) (alteration in original) (citations and internal quotation marks omitted). In evaluating whether the sanctions imposed were excessive, we consider whether the SEC abused its discretion. *Id.* at 66.

██ The petitioners first argue that substantial evidence did not support the SEC's determinations that they were both compensated on a profit-sharing basis by a customer, knew that they were being compensated in that manner, and made material misstatements about this activity, and that Adonnino failed to adhere to principles of good business practice and knowingly did business with one of his friends as a "public customer." The petitioners' principal contention is that, although federal law prohibits trading in an account in which one has an interest, or on a profit-sharing basis, *see United States v. Oakford Corp.*, 79 F.Supp.2d 357, 365 (S.D.N.Y. 1999), their at-issue conduct was not prohibited because, prior to 1999, trading with a profit-sharing result, but without a profit-sharing intent, did not constitute wrongdoing.

This claim is not, however, relevant to the case because sufficient evidence supported the SEC's finding of a profit-sharing intent as well as a profit-sharing result. According to the opinion issued by the Commission in this case, "Applicants [Adonnino and Cannizzaro] knowingly shared the profits and losses in [their customer] Burwick's account and therefore had an interest in the account." The question of "[w]hether petitioners acted with the requisite mental state is a question of fact," *Valicenti*, 198 F.3d at 65, and proof of knowledge "need not be direct, but may be a matter of inference from circumstantial evidence," *id.* (internal quotation marks omitted). The Commission relied on several circumstances in reaching its conclusion that Adonnino and Cannizzaro had knowingly entered into an arrangement to share profits with their customer Burwick. First, Burwick himself testified that he believed he had arranged with Cannizzaro and Adonnino to share profits. Second, the record of payments demonstrated that Burwick provided "approximately 50–60% of profits, with no payments during periods when the account was operating at a net loss." The Commission also explained that the NYSE had determined that Cannizzaro's and Adonnino's alternative account of why they had received such varying amounts of money from Burwick was not credible, especially in light of their usually fastidious accounting efforts. There is, thus, substantial evidence supporting the Commission's determination that Adonnino and Cannizzaro "knowingly shared the profits and losses in Burwick's account and therefore had an interest in the account."

██ Because of their claims that they were unaware that Burwick was compensating them on a profit-sharing basis, Adonnino and Cannizzaro were also disciplined for making material misstatements

to the NYSE, in violation of NYSE Rule 476(a)(4). These misstatements consist in their denial to NYSE examiners that they knew of the profit-sharing arrangement with Burwick, a denial that the Commission, as we have seen, rejected. Although the petitioners contend that this disciplinary action excessively duplicates the sanctions for trading in an account with an interest and also punishes them for putting on a defense, these arguments are unavailing. While Adonnino and Cannizzaro should certainly have been given latitude to establish their defense, this latitude cannot be construed as broad enough to encompass making material misstatements in testimony to the NYSE.

■ Adonnino was also disciplined alone for several violations. During his time as a floor broker, Adonnino executed numerous trades for his friend, Carlos Gonzalez, who was then employed as a trader at Interacciones Global and later employed at CS First Boston. Although Gonzalez did place trades in his institutional capacity, he also traded his personal account during the same time frame. Under federal law, as well as the NYSE, firms doing business with "public customers," defined as those who are not registered broker-dealers, must meet certain requirements. *See* NYSE Rule 319; Exchange Act Rule 17a–5, 17 C.F.R. 240.17a–5; NYSE Information memo No. 91–25 (July 8, 1991), 1991 NYSE Info. Memo LEXIS 39. Adonnino does not dispute that AFC did not comply with these requirements.

Adonnino instead asserts that he did not know Gonzalez was transacting business for his own account when he recorded the trades. NYSE cases dealing with impermissible trading with public customers do not explicitly discuss any scienter requirement. *See, e.g., In re Blum*, NYSE. Panel Dec. 03–172, 2003 NYSE Disc. Action LEXIS 193 (Sept. 18, 2003); *In re Heffer-*

*nan*, NYSE Panel Dec. 03–47, 2003 NYSE Disc. Action LEXIS 37 (Mar. 21, 2003). They do, however, invoke NYSE Rule 405, which requires members to use due diligence to learn the essential facts relative to a customer. *See Blum*, 2003 NYSE Disc. Action LEXIS, at *1. The record in this case demonstrates that Adonnino did not employ due diligence in ascertaining whether Gonzalez was trading in his own account and that the facts of which Adonnino was aware should have put him on notice that such activity was occurring. Adonnino, in his deposition, admitted that Gonzalez had told him he would be trading TeleMex, which he traded often with AFC, for his own account. He also acceded to changing the "give-ups" on Gonzalez's trades, which, as recordings of the telephone conversations he had with Gonzalez revealed, he knew would not comply with the relevant regulations. Finally, Adonnino knew that someone named "Judy" dealt with Gonzalez's personal account at Bear Stearns and that some of the "tickets" for trades had been changed to address Judy. All of this information was sufficient at least to put Adonnino on notice that Gonzalez was trading for his personal account.

■ Adonnino also challenges the determination that he failed to reasonably supervise and control AFC's business activities. As the SEC has explained,

Section 15(b)(6) of the Securities Exchange Act, incorporating Section 15(b)(4)(E) by reference, provides that this Commission may sanction any person associated with a broker-dealer if we find that such person "failed reasonably to supervise, with a view to preventing [securities] violations . . . another person who commits such a violation, if such other person is subject to his supervision". Section 15(b)(4)(E) further provides that no person shall be deemed "to have failed reasonably to supervise any

other person" if he "reasonably discharged the duties and obligations incumbent upon him by reason of [his firm's] procedures" and had no reasonable basis for believing that those procedures were not being followed. *In re Huff*, 50 S.E.C. 524, 1991 WL 296561, at *2 (Mar. 28, 1991) (alteration in original). The petitioner claims that he complied with these regulations by consistently attempting to elicit regulatory compliance from his subordinates. However, the fact that he supervised individuals involved in trading with an interest and, moreover, participated in this activity himself is sufficient to demonstrate that he failed in his duty to reasonably supervise and control. *See In re Montelbano*, 79 S.E.C. Docket 1172, 2003 WL 147562, at *9 (Jan. 22, 2003) ("Participating in misconduct is itself a supervisory failure.").

█   The petitioners also argue that the sanctions that the NYSE imposed were "excessive and oppressive in relation to the violations found to have been committed." We review the Commission's decision to uphold these sanctions for abuse of discretion. *Valicenti Advisory Servs., Inc.*, 198 F.3d at 66. The petitioners claim that the "facts of this case are unique" and that the sanctions imposed should, consequently, similarly be unique. However, petitioners at the same time claim that in at least one other similar case, lesser sanctions were given. The case to which they cite, however, *In re Corley*, NYSE Panel Dec. 01–176, 2001 WL 1564933 (Oct. 19, 2001), in which Corley and his firm were fined only $75,000 jointly and severally and censured, differs in one significant respect from the petitioners' own situation. In *Corley*, there was no allegation of trading with an interest. Adonnino and Cannizzaro, however, were deemed to have committed an additional and material violation of the disciplinary rules.

According to SEC decisions, "the appropriate sanction depends on the facts and circumstances of each particular case." *In re McCarthy*, S.E.C. Docket 465, 2003 WL 22233276, at *10 (Sept. 26, 2003). In this instance, Adonnino was fined $200,000 and suspended for eighteen months, while Cannizzaro received a six-month suspension. A brief survey of cases in which individuals were found responsible for trading with a public customer or for trading with an interest demonstrates that the sanctions imposed in this case fell within the normal range. In *McCarthy*, a member censured for trading with an interest was suspended for two years and fined $75,000. *Id.* Another individual who engaged in discretionary trading was suspended for two years. *In re Acquafredda*, NYSE Panel Dec. 02–58, 2002 WL 799574, at *7 (Mar. 19, 2002). It is true that in some cases in which individuals either engaged in discretionary trading or conducted business with a public customer, the NYSE simply imposed a censure and monetary fine without suspension. *See, e.g., In re MacGilvray*, NYSE Panel Dec. 03–21, 2003 NYSE Disc. Action LEXIS 20 (Feb. 24, 2003) (imposing a $35,000 fine); *In re Fishman*, NYSE Panel Dec. 03–213, 2003 NYSE Disc. Action LEXIS 233 (Nov. 24, 2003) (imposing a $35,000 fine on each of the individuals involved). In light of the standard of review that we apply and the multiple violations that Adonnino and Cannizzaro committed, however, we sustain the sanctions imposed.

We have reviewed the petitioners' other contentions and find that they lack merit.

For these reasons, the order of the Securities and Exchange Commission is therefore **AFFIRMED**.