16-1739-cv
Harris v. SEC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand seventeen.

PRESENT:
> DENNIS JACOBS,
> JOSÉ A. CABRANES,
> RAYMOND J. LOHIER, JR.,
> > <u>Circuit Judges</u>.

─────────────────────────────────

Talman Harris,

> <u>Petitioner</u>,

> v.                                                     16-1739

**United States Securities and Exchange Commission,**

**Respondent.**

_____

FOR PETITIONER:                                 Paula D. Shaffner (Amy E. Sparrow,
                                                                Scott H. Bernstein, <u>on the brief</u>),
                                                                Stradley Ronon Stevens & Young,
                                                                LLP, Philadelphia, PA.


FOR RESPONDENT:                               Benjamin Vetter, Senior Counsel <u>for</u>
                                                                Sanket J. Bulsara, Acting General
                                                                Counsel(Michael A. Conley, Solicitor,
                                                                Tracey A. Hardin, Assistant General
                                                                Counsel, <u>on the brief</u>), Securities and
                                                                Exchange Commission, Washington,
                                                                D.C.

Petition for a review of a decision of the United States Securities and Exchange Commission.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Talman Harris petitions for a review of a March 31, 2016 decision issued by the United States Securities and Exchange Commission ("SEC") sustaining the findings of the Financial Industry Regulatory Authority ("FINRA") and FINRA's National Adjudicatory Council ("NAC"). FINRA found that Harris and his business partner, William Scholander, violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and FINRA Rules 2010 and 2020, by recommending that customers purchase shares of Deer Consumer Products, Inc. ("DEER"), without disclosing that they had received a $350,000 "advisory fee" from DEER two months earlier. Joint App'x at 21. In light of the violations and the presence of several aggravating factors, FINRA determined that Harris and Scholander should be permanently barred from associating with any member firm. On appeal, Harris argues that: (1) his failure to disclose the

$350,000 payment did not violate Exchange Act Section 10(b); (2) even if he did commit a 10(b) violation, the permanent bar is an oppressive and excessive sanction; and (3) the SEC should have reviewed the sanctions deemed appropriate, but not imposed, by the NAC for violating NASD Rule 3030 and FINRA Rule 2010.   We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

      **1.**    "In order to establish primary liability under §10(b) and Rule 10b-5" the SEC must show "that in connection with the purchase or sale of a security the defendant, acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996).

      Harris contends that, under Press v. Chemical Investment Services Corp., 166 F.3d 529, 536 (2d Cir. 1999), he had a duty to disclose the DEER payment to customers only if: (1) the $350,000 payment was dependent on the sale of DEER securities and (2) the customers to whom he recommended the DEER securities purchased them.   Absent such a "transactional nexus," Harris disclaims a duty to disclose.

      Although "there is no general fiduciary duty inherent in an ordinary broker/customer relationship, a relationship of trust and confidence does exist between a broker and a customer with respect to those matters that have been entrusted to the broker." United States v. Szur, 289 F.3d 200, 211 (2d Cir. 2002) (internal citations and quotation marks omitted).   When a broker makes a securities purchase recommendation, the "broker assume[s] a position of trust and confidence with respect to the recommendation such that his clients would expect him to disclose all material information in his possession that would affect his client's decision regarding the recommended transaction." United States v. Santoro, 302 F.3d 76, 81 (2d Cir. 2002); see also de Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1302 (2d Cir. 2002); Szur, 289 F.3d at 211; Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1172 (2d Cir. 1970).

      The $350,000 payment, made by a securities issuer less than two months prior to recommending its stock, and used to set up the brokerage itself, was

material information because there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988)(internal citation and quotation marks omitted); see also Chasins, 438 F.2d at 1172 (failure to disclose that broker-dealer was a market maker in the stock it recommended was a material omission).

Harris identifies no precedent for a requirement that there be a "transactional nexus" before a position of trust and confidence arises between broker and customer. A broker who chooses which stocks to recommend to clients is required to disclose all material information that could affect his client's purchase decision. Santoro, 302 F.3d at 81; see also United States v. Laurienti, 731 F.3d 967, 974 (9th Cir. 2013)(expressly adopting this Circuit's reasoning in Santoro to rule that "the professional discretion [a broker] exercise[s] in selecting which securities to recommend, and the deference his recommendations receive[] in light of his special knowledge and expertise, afford[] him a position of trust"). Press, on which Harris relies, does not assist him: Press concluded that a broker's failure to disclose a $158 markup on $102,000 T-bill at maturity fell in a gray area of disclosure because the broker's sole function was to execute the trade, not to make a recommendation on buying the T-bill. 166 F.3d at 536-537.

Harris argues that, in any event, he lacked the requisite scienter for a 10(b) violation since he acted in a gray area of the law. "Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud; or at least knowing misconduct." First Jersey Sec., 101 F.3d at 1467 (internal citation omitted). The scienter requirement is satisfied by recklessness, which "represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978) (internal citation, alteration, and quotation marks omitted). "Proof of scienter need not be direct, but may be a matter of inference from circumstantial evidence." Wechsler v. Steinberg, 733 F.2d 1054, 1058 (2d Cir. 1984) (internal quotation marks omitted). Because scienter is a fact question, "[t]he findings of the Commission, . . . if supported by substantial evidence, shall

be conclusive." 15 U.S.C. § 80b–13(a).

The SEC's findings are supported by substantial evidence. Harris is a seasoned broker who should have known he had a duty to disclose this information. See S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 109 (2d Cir. 2009). Harris points out that (1) his colleagues did not disclose the payments either and (2) he did not hide the DEER payment. Harris' (at least) reckless failure to fulfill his duty to disclose is not refuted or mitigated by his colleagues' failure to do so as well, or by his disclosure of the payment to his colleagues.[1]

**2.** Harris also argues that FINRA's permanent bar is excessive and oppressive, and the SEC's decision to uphold the penalty should be reversed because: (1) the SEC did not properly consider mitigating factors under the FINRA Sanction Guidelines; and (2) the sanctions are not in line with the general remedial purpose of sanctions. None of Harris' arguments merit relief.

FINRA, not the Commission, decides what sanction to impose on its members for violating securities laws or FINRA's rules. 15 U.S.C. § 78s(e)(2). The SEC "must sustain the sanction chosen by [FINRA], even if [the Commission] would not have imposed the sanction in the first instance" unless the SEC finds that the sanction is "excessive or oppressive or imposes an inappropriate or unnecessary burden on competition." Edward John McCarthy, Exchange Act. Rel. No. 53138, 2006 WL 126703 at *1 (Jan. 18, 2006) (internal quotation marks omitted). When reviewing FINRA sanctions, the Commission looks at "[t]he seriousness of the offense, the corresponding harm to the trading public, the potential gain to the broker for disobeying the rules, the potential for repetition in light of the current regulatory and enforcement regime, and the deterrent value to the offending broker and others." McCarthy v. SEC, 406 F.3d 179, 190 (2d Cir. 2005).

---

[1] Harris contends he could not have acted recklessly because a First Merger lawyer knew of the payment. However, Harris established none of the elements required to show reliance on the advice of counsel. "Even where these prerequisites are satisfied, such reliance is not a complete defense, but only one factor for consideration." Markowski v. SEC, 34 F.3d 99, 105 (2d Cir. 1994).

For intentional or reckless material omissions of the kind Harris engaged in, the then-effective FINRA Sanction Guidelines recommended a fine ranging from $10,000 to $100,000, a suspension ranging from 10 days to two years, or, in egregious cases, a bar. The SEC considered the following aggravating factors:

- Harris and Scholander sold nearly $1 million in DEER securities without disclosing the payment to at least 42 different customers between February and November 2010;
- Harris profited from the misconduct because he (1) gained a benefit from the use of the DEER payment to acquire and open First Merger, and (2) he and Scholander collected $13,700 in gross commissions on customers' subsequent purchases of DEER securities.

Additionally, the SEC justified the bar on the ground that Harris provided inaccurate or misleading information, and "provid[ed] inaccurate or misleading testimony to FINRA investigators." Joint App'x at 33; see also Id. at 29-30, 32. The SEC has previously ruled that "supplying false information to [FINRA] during an investigation" creates a substantial "risk of harm to investors and the markets," and makes a member "presumptively unfit for employment in the securities industry." Geoffrey Ortiz, Exchange Act Rel. No. 58416, 2008 WL 3891311 at * 9 (Aug. 22, 2008). Harris does not contest the finding that he testified falsely.

The mitigating factors cited by Harris are: (1) the ability to aggregate, or batch, the various violations for a single sanction; (2) an alleged lack of customer harm; and (3) lesser sanctions were imposed in similar cases. Notwithstanding these contentions, the Commission considered each of these factors at his hearing, and explained why they were unavailing.

Next, Harris argues that the SEC failed to articulate an adequate remedial basis for barring him from the securities industry, but this contention is also incorrect. The SEC determined that the bar was remedial because it would "protect the investing public by encouraging brokers to disclose all material adverse facts and conflicts of interest when they recommend securities to their customers." Joint App'x at 35. The SEC need only offer "[s]ome explanation

6

addressing the nature of the violation and the mitigating factors presented in the record." <u>McCarthy</u>, 406 F.3d at 190.   The SEC noted the seriousness of the offense (Joint App'x at 24-26), Harris' profit (<u>id</u>. at 23, 32), the repeated failure of disclosure over a period of nine months (<u>id</u>. at 21), Harris' false and misleading testimony to FINRA (<u>id</u>. at 29-30, 32-33), and the need to protect investors (<u>id</u>. at 35).   This is an adequate explanation for why the bar was needed and is remedial.

**3.**      Finally, Harris argues that the Commission should have reviewed sanctions that FINRA considered but chose not to apply.   In light of the bar, FINRA decided to forgo certain sanctions (a three-month suspension and a $15,000 fine) for Harris' failure to report outside business activities, in violation of NASD Rule 3030, while he was associated with a prior brokerage firm.   The Commission "may cancel, reduce, or require the remission" of FINRA sanctions only if the Commission finds that the sanction imposed is "excessive or oppressive." 15 U.S.C. § 78s(e)(2).   The Commission correctly decided not to review the sanctions that FINRA did not actually impose.

Accordingly, we **DENY** the petition for review.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK